UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 3:26-mj-3-HTC

MARKUS EDWARD HAMLETT,

    Defendant.
    _____/

## ORDER OF DETENTION

Defendant has been charged in a complaint with making threats against the President in violation of 18 U.S.C. § 871(a).  Doc. 1.  At Defendant's initial appearance,[1] the Government moved for detention under 18 U.S.C. § 3142(f)(2) of the Bail Reform Act ("BRA"), based on a risk of flight and non-appearance.  Doc. 8.  The Court held a detention hearing on February 11, 2026.  For the reasons set forth below, the Government's motion shall be GRANTED and the Defendant shall be detained under the BRA.

    **I.**    **Risk of Flight**

Under the BRA, when the Government moves for detention based on risk of flight, it is the Government's burden to prove by a preponderance of the evidence

---

[1] Defendant was initially before the Court on a criminal complaint and that was when the Government moved for detention.  However, just prior to the detention hearing, Defendant was indicted.

that, if released, there is a serious risk Defendant will leave the jurisdiction to avoid prosecution or will not show up for his court appearances. Once the Government meets its burden of showing it is more likely than not there is a serious risk Defendant will flee, the Court must then consider the factors set forth in § 3142(g) to determine whether there are any conditions or combination of conditions the Court can impose that will reasonably assure the Court that Defendant will be neither a serious risk of flight nor a danger to the community. *See United States v. Castellanos-Almendares*, 2019 WL 3937862 (S.D. Fla. Aug. 20, 2019) ("If the Court, at a detention hearing properly sought by the Government under the Bail Reform Act on serious risk of flight grounds, determines that, based on the facts, proffer, testimony, and argument presented, the release of the defendant would constitute a danger to the community or a person in the community, the Court cannot simply turn a blind eye to those facts. In such a case, the Court is required by the Bail Reform Act to consider a defendant's alleged dangerousness.").

Here, the Government argues Defendant is a serious risk of flight because he has been living in his car, has limited ties to this District, and has been traveling from state to state "based on the weather." Based on the evidence proffered by the Government, the Court finds the Government has established by a preponderance of the evidence that Defendant is a risk of flight or nonappearance. *See* Exhibit 1.

Case No. 3:26-mj-3-HTC

Namely, the Government admitted into evidence an investigative report from Special Agent Joseph Akos regarding Defendant. According to that report, Defendant had reported living out of his Dodge Caravan, which law enforcement confirmed based on the appearance of the van. It was outfitted with a cot, and contained cooking supplies, clothes, bottles of urine, and general trash. The vehicle was also outfitted with black, opaque fabric to obscure the windows. Additionally, prior to being found in this District, in October 2025, Defendant reported living in his vehicle, which was parked along a street in San Jose, California. The report indicates Defendant "travels without a plan," and had been to California, Missouri, and Washington D.C. It also appears he "does not have any relationships he is maintaining," even though he does have an ex-wife and son who reside in this District. He is also reported to have two sons and an ex-girlfriend who reside outside of the country.

Finding the Government has met its burden of showing Defendant is a risk of flight, the Court considered the § 3142(g) factors and, for the reasons stated on the record as well as the reasons below, the Court finds there are no conditions or combination of conditions, which the Court could impose that would reasonably assure the Court that Defendant will not be a risk of flight or a danger to the community.

## II. Bail Reform Act, § 3142(g) Factors

The BRA identifies the factors a court must consider when deciding whether to release or detain a defendant. 18 U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." *Id*.

### A. Nature and circumstances of the offenses charged

As stated above, Defendant is charged with making threats against the President. Although Defendant is not being charged with an "act" of violence, the threats at issue are certainly serious and exhibit homicidal ideations, which if carried out could have resulted in severe injury or death to the President. Thus, the Court finds the nature of the offense weighs in favor of detention.

### B. The weight of the evidence

Next, the Court considers the weight of the evidence. This factor concerns both the weight of the evidence of dangerousness, as well as the strength of the Government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006).

Here, according to SA Akos's report, Defendant sent a series of emails, beginning in May 2025, which contained serious threats of violence against President Trump, including that he was "planning on murdering" the President. Moreover, it appears Defendant may have taken some conduct toward carrying out these threats because in one email he admits to going to Washington D.C. to plan the "murder" and was, in fact, in Washington D.C.  Additionally, in October 2025, Defendant stated to law enforcement in San Jose that he had "great plans to assassinate" the President.  In December 2025, Defendant posted a message on the CIA's Public Website, once again, referring to the "murder of Donald Trump."

Based on the evidence proffered by the Government as well as SA Akos's affidavit supporting the criminal complaint, the Court finds there is probable cause to support the charge against Defendant, that the weight of the evidence is strong, and that it favors detention.

### C. The history and characteristics of Defendant

The Court is also required to consider Defendant's history and characteristics, which include his criminal history, ties to the community,[2] employment history, and history of substance abuse, if any.

---

[2] "Community ties" under the BRA may embrace the charging district as well as another community in the United States. *See United States v. Santos-Flores*, 794 F.3d 1088, 1093 (9th Cir. 2015).

Defendant is 45 and was born in Missouri. He previously served in the United States military (the Marine Corps and the Air Force). His prior criminal history includes a charge for strangulation of a household member and domestic battery in 2022, while he was in Wyoming, that was dismissed; and a 2022 charge for DUI, interference with law enforcement, and possession of an open container, the disposition of which is unknown. Additionally, he was investigated by the Air Force for sexual assault on an intimate partner based on allegations made by his ex-girlfriend. Finally, in 2024 Defendant was convicted by the Air Force for a DUI and assaulting a law enforcement officer. That charge resulted in a reprimand and 120 days of incarceration. Despite that conviction, Defendant was allowed to honorably retire from the military.

Defendant has an ex-wife and an 18-year-old son that he sees sometimes, as well as two toddler sons with an ex-girlfriend who live out of the country. According to SA Akos's report, Defendant came to the attention of the Secret Service during the Air Force's investigation of Defendant for sexual assault of multiple women. Although there was no action taken as a result of the investigation, various Airmen received multiple emails from Defendant threatening President Trump, an OSI agent – "including that he needed to look down the barrel of a 9mm" – and an ex-girlfriend.

Additionally, the report indicates Defendant has been identified as having suicidal ideations and problems with severe alcohol abuse.

During the Secret Service's investigation of Defendant, they interviewed friends and former family members who report Hamlett planned to move to the "mountains" to live with a female companion, that he has been diagnosed with narcissistic tendencies, substance abuse disorder, and PTSD, and that he has exhibited physically violent behavior in the past. Moreover, at least one of the interviewees expressed fear of physical harm from Defendant, while another indicated Defendant "lives in a different reality" and reported Defendant has said "I am not afraid of dying because I can't die." He is also reported as having said "I'm going to f*** somebody up" "just wait and you will see."

Although Defendant was not found with weapons at the time of his arrest, he reports owning 3 rifles and 2 handguns which are kept at his ex-wife's home. Also, SA Akos's report indicates Defendant does not have "any relationships he is maintaining."

Immediately prior to his arrest for the pending federal charges, Defendant was encountered by Escambia County Sheriff's Office deputies at or near the location of Casino Beach. During this encounter, Defendant refused to comply with the deputies' orders, entered a restricted area, and told officers the incident was supposed to result in a "fight." He also appeared to be intoxicated and made threats against the Santa Rosa County Sheriff.

Case No. 3:26-mj-3-HTC

He was subsequently Baker Acted and sent to the Lakeview Center for treatment. While at the Center, employees reported that Defendant yelled multiple times that he was going to "kill" the President, going to "shoot him," and also made threats against Sheriff Bob Johnson. He was documented as having "grandiose delusions," being "politically preoccupied," and exhibiting "homicidal intentions toward local officials." He also made verbal threats towards the staff.

Based on the above, the Court finds this factor weighs in favor of detention.

**D. Nature and seriousness of the danger posed by release**

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. Given Defendant's history of mental instability, combined with his repeated threats of violence against those officials he perceives to be against him, prior history of physical violence, alcohol abuse, and lack of significant ties to the community or meaningful personal relationships, the Court finds Defendant to be a serious risk of danger to the community if released.

Although Defendant seeks to be released to the Waterfront Mission and to a VA program, the Court finds those conditions will not reasonably assure the Court that Defendant will not be a risk of flight or danger. There would be nothing keeping Defendant from leaving either of those facilities. Moreover, although Defendant may have, at this point, only made verbal or written threats of violence against

President Trump and others in authority, if the Court released Defendant, there would be nothing preventing Defendant from carrying out those threats. Indeed, according to SA Akos's report, Defendant may have attempted to carry out the threats against the President when he visited Washington D.C. The Court finds this evidence raises an articulable threat of future violence, which no condition or combination of conditions could prevent. *See United States v. DeGrave*, 539 F. Supp. 3d 184, 209 (D.D.C. 2021) (agreeing evidence proffered by the government establishes a serious risk that in the future defendant may engage in violence).

### III.   Conclusion

Considering the totality of the evidence, the Court finds the § 3142(g) factors weigh in favor of detention and does not find it can be reasonably assured Defendant will not be a serious risk of flight or danger to the community if released.

Accordingly, IT IS ORDERED Defendant be detained pending trial.

**DONE AND ORDERED** this 12th day of February, 2026.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**